IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SILVIA ANDRADE | : | CIVIL ACTION |
| v. | : | |
| ANDREW SAUL[1], | : | |
| Commissioner of Social Security | : | NO. 18-4895 |

O P I N I O N

JACOB P. HART  DATE: 12/17/2019
UNITED STATES MAGISTRATE JUDGE

Silvia Andrade brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. As set forth below, Andrade's Request for Review will be granted in part and the matter remanded for the taking of further testimony from a vocational expert to determine whether work exists which can be performed without accommodation by an individual of Andrade's height.

I.  Factual and Procedural Background

Andrade was born on November 30, 1982. Record at 164. She completed the eleventh grade in school. Record at 214. She worked as a line worker in a poultry preparing factory for ten years. Record at 214. Andrade is approximately 3 feet and 9 inches tall. Record at 341.

On September 24, 2015, Andrade filed her applications for DIB and SSI. Record at 164, 171. In them she asserted disability as of January 11, 2015, as a result of back pain caused by scoliosis, and leg pain. Record at 164, 171, 213.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

Andrade's applications were denied on December 18, 2015. Record at 73, 74. She then sought *de novo* review by an Administrative Law Judge ("ALJ"). Record at 87. A hearing was held in this matter on October 25, 2017. Record at 32. On January 22, 2018, however, the ALJ issued a written decision denying benefits. Record at 18. The Appeals Council denied Andrade's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Andrade then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.   The ALJ's Decision and Andrade's Request for Review

The ALJ determined that Andrade suffered from the severe impairments of scoliosis, asthma, and obesity. Record at 20. She determined that the record also established the existence of dwarfism, but that it was not a severe impairment because Andrade's history of employment showed that it had no more than a minimal effect upon her ability to work. Record at 21. The ALJ found that none of Andrade's impairments, and no combination of her impairments met or medically equaled a listed impairment. Id.

The ALJ determined that Andrade retained the residual functional capacity ("RFC") to perform sedentary work with these limitations: occasional postural activities, including climbing ladders, ropes or scaffolds; no unprotected heights; limited ability to speak and understand English; and a need to alternate between sitting or standing throughout the day while remaining on task. Record at 21-22.

Relying upon testimony from a vocational expert who appeared at the hearing, the ALJ concluded that Andrade could not return to her prior work, but that she could work as a lens inserter, a polisher or as an inspector. Record at 25, 26. She determined, therefore, that Andrade was not disabled.

3

In her Request for Review, Andrade argues that the ALJ erred in failing to include in her RFC analysis the need for a footstool, which she indicated to the vocational expert would be necessary. Conversely, she argues that – to the extent that obtaining vocational expert testimony regarding her need for a footstool was equivalent to including it in the RFC – it was erroneous for the ALJ to find she was not disabled when she was only able to work if provided with an accommodation.

IV.     Discussion

As opposed to the ADA, which defines a "qualified individual" as one who can perform the essential functions of her job with reasonable accommodation, the Social Security Act does not take the possibility of "reasonable accommodation" into account. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 808 (1999). Therefore, an ALJ is not entitled to consider potential accommodation by employers in determining the availability of jobs in the national economy that the claimant can perform. Poulos v. Commissioner of Social Security, 474 F.3d 88, 94-5 (3d Cir. 2007). Under Cleveland, then, if the only work the ALJ could identify as suitable for Andrade required an accommodation, Andrade was entitled to a finding of disability. The question, therefore, is whether this is the case.

At the hearing, the ALJ asked the vocational expert a hypothetical question postulating an individual of Andrade's age, educational level, and past work experience who was capable of light work; no climbing of ladders, ropes, or scaffolds; no unprotected heights; occasional "posturals"; a limited ability to speak and understand English; and the need for a sit/stand option. Record at 47. He then amended the hypothetical to address an individual with the same limitations except that she was limited to sedentary work. Record at 48.

In response to the second hypothetical, the vocational expert named the jobs of lens inserter, polisher, and inspector, which were the jobs ultimately included by the ALJ in her decision. Record at 48. The ALJ then asked:

> ALJ: And the individual would be able to alternate from sitting to standing in these jobs?
>
> VE: Yes, Your Honor.
>
> ALJ: All right. If the individual while standing would need to stand on a foot stool would those jobs be able to be performed?
>
> VE: Yes, Your Honor.
>
> ALJ: Would that interfere with the performance of the job at all?
>
> VE: No.

Record at 48-9.

The Commissioner argues that the vocational expert did not testify that the jobs *required* the use of a foot stool, so that Cleveland is inapplicable here. Nevertheless, the question posed by the ALJ does suggest that she thought a foot stool might be necessary for Andrade, who is under four feet tall.

Further, there is not enough relevant vocational expert testimony in the record to rule out the possibility that an accommodation in the form of a foot stool might be necessary. The vocational expert did testify: "for those positions with the lens inserter your reaching is like waist level." Record at 53. However, it is not clear whether the reaching would be waist level for someone of Andrade's height, nor is it clear whether the vocational expert was also referring to the positions of polisher and inspector.

Accordingly, I will remand this matter to the agency for the taking of further vocational testimony to ensure that work exists in the economy which Andrade is capable of performing without accommodation.

5

V. <u>Conclusion</u>

In accordance with the above discussion, I conclude that this matter should be remanded to the agency for the taking of further vocational testimony to ensure that work exists in the economy which Andrade is capable of performing without accommodation.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE